UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIAM C. SWAN,

                Plaintiff,

v.                                            Case No. 19-cv-1031-pp

JUDY SMITH, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS MOOT PLAINTIFF'S MOTIONS TO USE RELEASE ACCOUNT TO PAY FOR COPIES (DKT. NOS. 8, 9) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      William C. Swan, who is representing himself and was confined at Oshkosh Correctional Institution at the time he filed his complaint, sued under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights.[1] This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, his motions for leave to pay for copies from his release account, dkt. nos. 8 and 9, and screens the complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with

---

[1] The plaintiff since has informed the court that he is homeless and staying at a motel. He has not yet submitted a new address but has provided the name of his probation officer and asks that mail be sent to her.

1

his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 22, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $1.14. Dkt. No. 5. The court received the fee on August 5, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The plaintiff is responsible for paying the $348.86 balance of the filing fee over time as he is able.

**II. Letter Motions for an Order Authorizing the Plaintiff to Use Release Account Funds to Pay for Copies (Dkt. Nos. 8, 9)**

While he was still in custody, the plaintiff twice asked the court to issue an order permitting him to use his prison release account to pay for copies of his medical documents. Dkt. Nos. 8, 9. Because the plaintiff has been released from custody (and presumably has received the funds in the release account), the court will deny the motions as moot.

**III. Screening the Complaint**

A. Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff has sued Oshkosh Warden Judy Smith, Assistant Warden Canon, Security Director Tony, Correction Program Supervisor Feltes, Unit Director Delvaux, Officer Wright, and Second Shift Lieutenant Christianson. Dkt. No. 1 at 1.

The plaintiff alleges that sometime between July and August 2018, Smith and Delvaux distributed a memorandum stating that the doorway to the Program Unit of the facility was always to be locked. Id. at 2. At 8:30 pm on August 25, 2018, the plaintiff was involved in a fight with another inmate in the Residential Program Unit connected to Unit W in the prison.[2] Id. The plaintiff alleges that, because the door into the Program Unit was locked under the new policy, no officer could quickly access the Program Unit connected to Unit W. Id. The officers were therefore unable to intervene and stop the assault "in a timely manner." Id.

Wright allegedly was the only officer in the Program Unit, and the plaintiff alleges that he "did not use adequate training to stop assault in a timely manner." Id. at 3. Wright allegedly did not use pepper spray or a taser to stop the fight and instead "watched [the] assault escalate to serious bodily harm before tr[y]ing to stop assault."[3] Id. That night allegedly was Wright's first

---

[2] The Residential Program, according to the plaintiff, "is a program unit for serious mental illness." Dkt. No. 1 at 2.

[3] The plaintiff says that Wright noted his delay "in his report" about the incident. Id. at 3.

4

time working in Unit W unsupervised, and the plaintiff faults Christianson for allowing Wright to work in that unit by himself without proper training. Id. The plaintiff also alleges that at the time of the assault, Wright was handing out medication by himself; the plaintiff alleges that there should have been two officers conducting medication pass. Id. The plaintiff asserts that the sergeant station in the Program Unit also was unmanned, leaving security in that unit inadequate; he does not say who was responsible for the unmanned station. Id. The plaintiff alleges that the door to the Program Unit is now left ajar for emergency access. Id. He says he was taken to a hospital after the assault and now has "permanent damage to his left eye & finger on [his] right hand." Id.

The plaintiff asserts violations of his Eighth and Fourteenth Amendment rights. Id. at 4. He seeks compensatory and punitive damages against each defendant. Id.

C. Analysis

The plaintiff's allegations amount to a claim of deliberate indifference to the conditions of his confinement, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had

5

a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that Smith and Delvaux were deliberately indifferent to his safety when they issued the new policy to keep the door to the Program Unit locked. Prisons need not be risk-free, "but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates." Anderson v. Morrison, 835 F.3d 681, 683 (7th Cir. 2016). As the plaintiff explains it, keeping the only entrance to the Program Unit locked while inmates were inside caused needless delay in responding to a possible event (such as an assault on an inmate) and increased the risk of harm to him and other inmates. He alleges that the prison since has recognized this hazard, evidenced by the fact that ever since, it has left the door to the Program Unit ajar. That evidence, the plaintiff asserts, shows that prison officials knew the locked-door policy posed a risk to inmates. Even if the prison officials did not know at the time that the policy would cause the delay, it would have been obvious that locking the only entry to a part of the prison would cause a delay to officers attempting to enter that area, especially in an emergency situation. Id. (citing Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005), for proposition that "known or obvious dangers" to health state a claim under Eighth and Fourteenth Amendments). Taking the plaintiff's allegations as true, as the court does at the screening stage, the court concludes that the plaintiff has

stated a claim against Smith and Delvaux for implementing a policy that created a significant risk of serious harm to him.

The plaintiff alleges that Wright failed to stop the assault as quickly as he could and instead allowed the plaintiff to suffer serious harm. "[C]orrectional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene with a due regard for their safety." Shields v. Dart, 664 F.3d 178, 181 (7th Cir. 2011). A lone officer "is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy." Id. (quoting Guzman v. Sheahan, 495 F.3d 852, 858 (7th Cir. 2007)).

The plaintiff alleges that Wright was the only officer in the Program Unit when he and the other inmate started fighting. The plaintiff does not allege that Wright was aware of a likelihood or risk that the plaintiff might be attacked or involved in a fight with another plaintiff. He does not allege that Wright didn't try to intervene or try to stop the fight. He does, however, allege that Wright "watched the assault escalate to serious bodily harm before trying to stop the assault." Dkt. No. 1 at 3. While it is a close call, the court concludes that at this early stage, the plaintiff has stated a claim against Wright for deliberate indifference.

The plaintiff also alleges that Christianson was deliberately indifferent by assigning Wright to work the Program Unit alone without proper training. The plaintiff does not allege that Christianson was responsible for training Wright.

7

He does not allege that Christianson knew Wright was not trained to work on the unit. The court concludes that the plaintiff has not stated a claim against Christianson.

The plaintiff has not described or identified any failures, or any misconduct, by defendants Canon, Tony or Feltes. When a complaint fails to allege any action by a defendant, it fails to "state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570. The plaintiff makes a general allegation that every defendant failed to provide adequate security. Dkt. No. 1 at 3. That is not sufficient; for an individual to be liable under §1983, a plaintiff must show that that individual was personally involved in the alleged constitutional violation. Colbert v. City of Chi., 851 F.3d 649, 657 (citation omitted). Simply asserting that someone generally failed to assure security does not show personal involvement. The court will dismiss Canon, Tony and Feltes as defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES as moot** the plaintiff's motions to use his release account to pay for copies. Dkt. Nos. 8, 9.

The court **ORDERS** that defendants Christianson, Canon, Tony and Feltes are **DISMISSED** as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been

electronically transmitted to the Wisconsin Department of Justice for service on defendants CO Wright, Judy Smith and Unit Director Delvaux. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders

or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 29th day of January, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**